Janie McGHEE, Plaintiff-Appellant,

v.

Daniel D. DRAPER, Superintendent; Daniel D. Draper; Floyd E. Mott; Montie Jones; Jerry Stafford; Don Larmon; and Quentin Riley, Defendants-Appellees.

No. 79–1224.

United States Court of Appeals, Tenth Circuit.

Argued July 7, 1980.

Decided Jan. 16, 1981.

---

Feldman, Hall, Franden, Reed & Woodard, Tulsa, Okl. (Gene A. Davis of Davis & Thompson, Jay, Okl., with him on the brief), for defendants-appellees.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

In 1974, defendants, past and present members of an Oklahoma school board, declined to renew the contract of plaintiff, a non-tenured teacher. Plaintiff brought suit under 42 U.S.C. § 1983 seeking reinstatement with backpay, damages and attorney fees. In the case's previous appearance before this court, we held that the plaintiff had shown no entitlement to the position and hence had no protected property interest. *McGhee v. Draper,* 564 F.2d 902, 905–06 (10th Cir. 1977). However, we also indicated that the district court improperly granted defendant's motion for a directed verdict on plaintiff's liberty interest claim. Sufficient evidence "that the defendants' actions imposed a stigma or disability foreclosing the freedom of plaintiff to take advantage of other possibilities" was presented at trial to justify submission of the issue to the jury. *Id.* at 912. Furthermore, we held as a matter of law that the school board did not provide plaintiff a sufficient hearing, assuming that a liberty interest was implicated, and that "a remedy should be afforded for such denial of due process." *Id.*

We instructed the district court to hold new proceedings in order to determine whether the discharge infringed upon plaintiff's liberty interest and, if so, to "consider proper equitable relief for the denial of procedural due process." 564 F.2d at 916. Because of the board members' apparent good faith and the then-existing state of the law, we said that compensatory damages would be unavailable. *Id.* at 914–15. On remand, the district court did not conduct a new trial. Instead, the court decided that the only available remedy "would be a court-ordered hearing before the school board." Record, vol. 1, at 111. Because

David M. Silberman (Robert M. Weinberg, Washington, D. C., with him on the brief) of Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C. (and David Rubin, Washington, D. C., and Robert Hall, Houston, Tex., with him on the brief), for plaintiff-appellant.

William S. Hall, Tulsa, Okl. (Joseph R. Farris, Tulsa, Okl., with him on the brief) of

plaintiff had requested no such hearing, the court dismissed the action.

On appeal, plaintiff challenges the district court's rejection of her various claimed remedies. With respect to the availability of backpay and compensatory damages, plaintiff particularly urges that *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and *Bertot v. School District No. 1*, 613 F.2d 245 (10th Cir. 1979) (en banc), require modification of certain portions of our prior opinion.

## I. Preliminary Issues

Two threshold arguments of the defendants lend themselves to summary disposition. Because the School District itself was earlier dismissed from the case—and that dismissal was not appealed, 564 F.2d at 904—defendants contend that there are no members of the school board still before the court in their official capacities. If so, the remedies issues would be mooted; good faith precludes a damages award against the individual defendants, *see Wood v. Strickland*, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975), and the requested equitable relief requires an official-capacity party. Relying on *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), defendants also assert that plaintiff has not alleged "her deprivation was the result of the execution of the School District's policy, rule or custom." Brief for Appellee at 12. Such a deficiency would remove the basis for a § 1983 suit against the district or the individuals in their official capacities.

■ "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Social Services*, 436 U.S. at 690 n.55, 98 S.Ct. at 2035 n.5. *See also Bertot v. School District No. 1*, 613 F.2d at 247 n.1. In our previous treatment of this case—and despite the district court's earlier dismissal of the School District—we clearly considered the named defendants to have been sued in their official, as well as individual, capacities. *See, e. g.*, 564 F.2d at 916 n.16. Since we indicated that a damages recovery would be impossible, our remand would have been futile if no official defendants remained to provide the suggested equitable relief. The separate treatment of the District *qua* District and the board members in their official capacities certainly confused the logistics of the situation, but it did not end the lawsuit.[1] The named board members are before us in their official capacities.

■ *Owen v. City of Independence*, 100 S.Ct. 1398 (1980), disposes of defendants' argument that no board "policy, rule or custom" is here involved. *Monell* precludes holding the official entity liable "*solely* because it employs a tortfeasor," 436 U.S. at 691, 98 S.Ct. at 2036, but here, as in *Owen*, "it is the local government itself that is responsible for the constitutional deprivation." 100 S.Ct. at 1418 n.39. Hence, "it is perfectly reasonable to distribute the loss to the public as a cost of the administration of government, rather than to let the entire burden fall on the injured individual." *Id.*

## II. Liberty Interest

In our prior opinion we concluded that the district court had improperly directed a verdict against plaintiff on her liberty interest claim. That conclusion, of course, is the law of this case. Plaintiff must now be given an opportunity to establish her claim.

■ In order to recover under § 1983 for infringement upon a liberty interest, plaintiff must first show that the complained of conduct stigmatized or otherwise damaged

---

1. In its order dismissing the School District, the trial court did not feel that it was ending the lawsuit. The official capacity defendants remained in the action at least for the purposes of equitable relief. "[A]ny injunctive relief granted plaintiff in this case will be just as effective applied to the School Superintendent and members of the Board of Education, as it would if the school district were retained." Record in No. 75–1901, vol. 1, at 49. The trial judge's opinion that the District was cloaked with the State's Eleventh Amendment immunity did not protect the official capacity defendants from suits for equitable relief. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). See also note 4, *infra*.

her reputation. However, stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action. *Paul v. Davis*, 424 U.S. 693, 697–713, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1976). Such damage is properly vindicated through state tort actions. *Id.* In order to justify relief under liberty clause of the 14th amendment via § 1983, plaintiff's alleged reputational damage must be entangled with some other "tangible interests such as employment." *Id.* at 701, 96 S.Ct. at 1160. Plaintiff must be allowed to attempt to convince the trier of fact that these elements are present.

■ Plaintiff alleges that the stigmatization in this case was caused or enhanced by her non-renewal. Typically, when one's liberty interest is allegedly infringed upon by a discharge from employment, the termination or non-renewal will either explicitly state the stigmatizing factors or implicitly ratify some other stigmatizing allegations. Thus, the discharge will either cause or contribute to the alleged defamation. In either case, the defamed's liberty "to engage in any of the common occupations of life" is diminished, *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)), and the defamation has occurred "in the course of the termination of employment."[2] *Paul v. Davis*, 424 U.S. at 710, 96 S.Ct. at 1164. Thus, if plaintiff can show to the trier of fact that the non-renewal caused or enhanced her alleged reputational damage, she will have shown that she was entitled to a hearing or other reasonable opportunity to clear her name. *See Paul v. Davis*, 424 U.S. at 706–13, 96 S.Ct. at 1163–1166; *Board of Regents v. Roth*, 408 U.S. 564, 573–74, 92 S.Ct. at 2707 (1972).

■ Once it is determined that a hearing right was triggered because of an infringement upon plaintiff's liberty, the constitutional sufficiency of a purported hearing is a legal issue to be determined by the courts. In our prior opinion in this case we found that, assuming a violation of plaintiff's liberty interest, no constitutionally adequate hearing was afforded her. This is the law of the case and plaintiff need not present evidence on this final element of her claim.

■ The truth or falsity of any charges made or legitimized by the school board's action is not relevant to determining the existence of a procedural due process violation; it is relevant only in fashioning the appropriate remedy. The jury's determination whether plaintiff was deprived of a liberty interest because of the charges against her depends on the character of the charges, not on their truthfulness. The "truth or falsity ... [may] determine whether or not [the] decision to discharge [plaintiff] was prudent, but neither enhances nor diminishes [plaintiff's] claim that [her] constitutionally protected interest in liberty has been impaired." *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Just as we provide criminal trials to the guilty as well as to the innocent, we provide opportunities to rebut serious charges to those who will fail as well as to those who will prevail.[3]

**2.** The requirement of *Paul v. Davis* that reputational harm be entangled with "some more tangible interests" is thus met when a terminated or non-renewed § 1983 plaintiff can show that the termination at least aggravated his stigmatization. We do not mean to imply that this is a heavy burden for a plaintiff. Any termination occurring in an atmosphere where the plaintiff's reputation is at issue should be considered sufficient to meet *Paul*'s entanglement requirement. It should be the *state's* burden to show that termination in such a context is so removed from the plaintiff's reputational concern that it in no way impacted upon it.

Similarly, we should not be interpreted as implying that discharge from employment is the exclusive context in which a "tangible interest" can be entangled with a plaintiff's liberty interest for § 1983 purposes. *See, e. g.,* Monaghan, *Of "Liberty" and "Property"*, 62 Cornell L.Rev. 405, 432–33 (1977).

**3.** *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), includes a passage which superficially contradicts this position: "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." *Id.* at 628, 97 S.Ct. at 884.

**644**

### III. Remedies

When all of the elements of a § 1983 liberty claim are shown, a constitutional violation (failure to provide a hearing) is established. An appropriate remedy must then be fashioned. At a minimum, nominal damages would be available, even if the charges prove to be truthful. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). A post-termination hearing, if requested, might also be awarded. In addition, compensatory and equitable relief might be appropriate if the damaging, publicly-disseminated charges made by the school board in connection with the non-renewal are determined to be improper or false in any significant way. If, in response to special interrogatories, the jury determines that the charges were false and that plaintiff could have potentially vindicated herself if an appropriate hearing had been given, compensatory and equitable relief would be appropriate.

### A. *Compensatory Damages*

In the previous appeal, we determined that, because of the defendants' good faith, no damages remedy was available. Intervening authority has preempted that conclusion. *Owen v. City of Independence*, 100 S.Ct. 1398 (1980), holds local governmental officials in their official capacities liable for compensatory damages regardless of good faith. The broad remedial and

deterrent purposes of § 1983 outweigh any deleterious impact on the public treasury. *Id.* 100 S.Ct. at 1416–17.

A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed.

*Id.* 100 S.Ct. at 1415. Defendant school board members in their official capacity therefore may not escape liability for any actual damages traceable to the denial of procedural due process unless protected by the Eleventh Amendment.[4]

By permitting the recovery of damages resulting from procedural violations, we do not remove from plaintiff the task of proving causal connections. Damages are not to be presumed. *See Carey v. Piphus*, 435 U.S. 247, 261–64, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978). In a case such as this one, the fact-finder must carefully separate the consequences of the inadequate procedures per se from the consequences of any board actions that are justified or allegations that are true.

As explained previously, the truthfulness of the charges does not affect the right to procedural due process protections. However, truthfulness is clearly important in tracing the consequences at trial of a denial of procedural rights. "[W]here a depriva-

---

Read in context, the sentence clearly means only that absent a challenge to the truthfulness of the charges no hearing is necessary. The purpose of a hearing is "to provide the person an opportunity to clear his name," *Board of Regents v. Roth*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707, n.12, and obviously no hearing is required if the aggrieved person does not seek that result.

4. Although the trial court held that Oklahoma school districts are cloaked with the State's Eleventh Amendment immunity, it did so without the benefit of *Monell*'s statement that suing board members in their official capacity is generally no different than suing the board. 436 U.S. at 690 n.55, 98 S.Ct. at 2035 n.55. *See also Bertot v. School District No. 1*, 613 F.2d at 247 n.1. It is consequently unclear whether the trial court's retention of the official capacity

defendants was only for purposes of equitable relief or whether a damage remedy was intended to be left open to plaintiff as well. See note 1, *supra*.

In any event, it is apparent that plaintiff would have appealed the trial court's dismissal of the District had she suspected that the action would deprive her of an award of damages. On remand, should compensatory damages be deemed appropriate, the district court should reconsider its dismissal of the District in light of *Monell*, *Bertot*, and *Dowell v. Independent School District No. 89*, 71 F.R.D. 49, 57 (W.D. Okl.1976) (holding that Oklahoma school districts are "not the State or [an] arm of the State within the meaning of the Eleventh Amendment. [They are] merely a [sueable] political subdivision of the State").

tion is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Carey v. Piphus*, 435 U.S. at 263, 98 S.Ct. at 1052. The burden remains on the plaintiff to prove the link between the due process violation and any particular consequence that would support an award of damages.

### B. *Hearing*

In the exercise of its equitable powers, the district court could order a post-termination hearing to provide plaintiff with an opportunity to attempt to "clear [her] name." *Board of Regents v. Roth*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12. In some circumstances, such a hearing might be the only relief warranted, other than nominal damages. In this case, plaintiff has not requested a hearing. Her desire to forgo this avenue of relief should not prejudice her other legitimate claims.

### C. *Reinstatement*

■■■■ Ordinarily a governmental decision not to rehire an employee does not deprive that employee of "liberty." *Board of Regents v. Roth*, 408 U.S. at 575, 92 S.Ct. at 2708. Because of plaintiff's untenured status, defendants could properly have refused to renew her contract without providing a hearing or, indeed, without providing any reasons.[5] *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. at 2702 (1972). Accordingly, absent a property interest in continued employment, reinstatement is not ordinarily an appropriate remedy for deprivation of a liberty interest.

Plaintiff argues, however, that reinstatement is necessary in this case to erase the stigma and to "make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). She contends that reinstatement is proper in a case like this where the damage to reputation and the nonrenewal itself are inextricably linked.

■■ "The purpose of the due process hearing to which [plaintiff] was entitled was not to afford an opportunity to recapture [her] previous employment but simply to 'clear [her] name.'" *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338, 344 (5th Cir. 1978) (quoting *Board of Regents v. Roth*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12). *See Davis v. Oregon State University*, 591 F.2d 493, 496 (9th Cir. 1978); *Graves v. Duganne*, 581 F.2d 222, 224 (9th Cir. 1978). Defendants' failure to provide plaintiff with the chance to clear her name is not enough, standing alone, to justify reinstatement.

[T]he contemplated hearing does not embrace any determination analogous to the "second step" of [a] parole revocation hearing, which would in effect be a determination whether or not, conceding that the report were true, the employee was properly refused re-employment. [Absent a] property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire [her] presents no federal constitutional question.

*Codd v. Velger*, 429 U.S. at 628, 97 S.Ct. at 884 (footnote omitted).

Plaintiff believes that we read the *Codd* damning language too broadly—that the "contemplated hearing" refers only to the proper pre-termination hearing to which she was entitled and that a post-termination hearing involves different considerations. She insists that, having received no pre-termination hearing, only reinstatement can make her whole. We cannot agree with plaintiff's argument. Compensatory damages, together with appropriate equitable relief, will adequately recompense plaintiff for any harm caused by the procedural deficiencies. Plaintiff's theory would potentially convert the propriety—as opposed

---

5. Even without a protected property interest, employees may not be discharged for certain constitutionally infirm reasons, including exercise of first amendment rights. *See, e. g., Perry v. Sindermann*, 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696, 33 L.Ed.2d 570 (1972). In this case, plaintiff unsuccessfully sought to amend her complaint to include a first amendment claim. Although plaintiff's docketing statement for this appeal noted a challenge to the district court's denial, she did not brief that issue. Presumably, it has been abandoned. In any event, we find no abuse of discretion in the district court's dismissal of the first amendment claim.

to the procedural adequacy—of all stigmatizing discharges into precisely what *Codd* says they are not: federal constitutional questions.

■ Although we reject plaintiff's broad theory that reinstatement is necessary to remedy a termination involving an infringement of liberty, the district court's blanket statement—that "reinstatement is an inappropriate remedy to apply in a stigma-type liberty case where no property or First Amendment issues are involved," Record, vol. 1, at 110—is also too sweeping. If the plaintiff can prove that she would in fact have been retained had full procedural due process been provided, she may be reinstated.[6]

This theory of recovery requires a purely factual determination of the consequences of the due process violation. Given the problems of proof, the probability of success on such a theory may be remote, but we cannot say it is infinitesimal. In similar circumstances the Supreme Court has "assume[d] that the [trier of fact] *can* determine what the outcome would have been if [plaintiff] had received [a] hearing . . . . [T]his determination will include consideration of the likelihood that any mitigating circumstance to which [plaintiff] can point would have swayed the initial decision-makers." *Carey v. Piphus*, 435 U.S. at 261 n.16, 98 S.Ct. 1051 n.16. (emphasis in original). *Cf. Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 416, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

### D. *Backpay*

■ This court noted in *Bertot v. School District No. 1*, 613 F.2d 245 (10th Cir. 1979) (en banc), that "[a]n award of back pay . . . is an integral part of the equitable remedy of reinstatement and is not comparable to damages in a common law action." *Id.* at 250 (quoting *Harmon v. May Broadcasting*

*Co.*, 583 F.2d 410, 411 (8th Cir. 1978)). In holding that backpay was completely unavailable because the board members acted in good faith, the district court in this case relied on an earlier panel decision in *Bertot*, No. 76–1169 (10th Cir. Nov. 15, 1978). Intervening authority has, however, removed that determination as the appropriate law of the case. *See Bromley v. Crisp*, 561 F.2d 1351, 1363 (10th Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). "[W]hen the point is properly preserved for review, a different result is compelled where, subsequent to the first decision, there is an intervening change in the law by authoritative declaration of the authoritative court." *Page v. St. Louis Southwestern Railway*, 349 F.2d 820, 821 (5th Cir. 1965).

The en banc court in *Bertot* overruled the panel determination and held that the good faith of school board members does not preclude an equitable award of backpay. As with reinstatement, backpay is therefore an appropriate remedy in this case if plaintiff is able to prove a direct causal link between her denial of procedural due process and her termination.

### IV. Conclusion

We accordingly remand this case again to the district court. Plaintiff must be given an opportunity to prove that she was entitled to a hearing in connection with her nonrenewal of employment. If entitlement to a hearing is shown, plaintiff should be awarded nominal damages and any other relief which, consistent with this opinion, she can show is warranted.

---

6. The Supreme Court has treated the merits of similar cases in which reinstatement and backpay were only remedies sought. *See, e. g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Implicit is the assumption that such remedies are available—at least in some circumstances.