Martin **LATINSKY**, Plaintiff,

v.

Susan **ENGELEITER**, et al., Defendants.

Civ. A. 90–1572 SSH.

United States District Court, District of Columbia.

Sept. 21, 1990.

Robert L. Bell, Washington, D.C., for plaintiff.

David B. Orbuch, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss. Upon review of both motions, the parties' oppositions, and the entire record, the Court grants defendants' motion to dismiss and denies plaintiff's motion as moot.

### Background

Although specifics are in dispute, the basic facts in this case are relatively clear. Latinsky was employed by the Small Business Administration (SBA) as a senior staff attorney. He was a Schedule A, nonpreference excepted service employee in the Disaster Assistance Division of the SBA. At the time he was hired, in August of 1985, he signed a "Statement of Understanding." (*See* Defendants' Combined Motion in Opposition to Plaintiff's Motion for Preliminary Injunction and Motion To Dismiss, Attachment 1 to Affidavit of Allan Hoberman.) It stated that Latinsky understood that his employment with the Disaster Assistance Division of the SBA was of a tem-

porary nature, that he would not be entitled to the usual life and health insurance benefits, and that his employment could be terminated at any time without a two-week notice.

Until the fall of 1989, he was stationed at the SBA Area 1 Disaster Office in Fair Lawn, New Jersey. In September 1989, plaintiff received a letter stating that the office was being moved, in toto, to Niagara Falls, New York, on or before November 13, 1989. Because plaintiff had Reduction in Force (RIF) rights, he was told that he could either transfer to New York along with the office, or he would be terminated through adverse action procedures. (*See* Plaintiff's Motion for a Preliminary Injunction, Exhibit A.) Plaintiff opted to not transfer and to be separated from federal service through adverse action procedures. *Id.* Before he could be separated, Hurricane Hugo hit, creating a need for attorneys in the U.S. Virgin Islands. Latinsky was given an opportunity to move to the U.S. Virgin Islands on a temporary basis. For reasons which are in dispute, Carl Jordan, Director, Disaster Area 1, Niagara Falls, flew to the Virgin Islands and had a meeting with Latinsky and Marilyn Bogue, Deputy Area Director.[1] At that meeting Jordan notified Latinsky that he was going to be terminated. Thus, on March 17, 1990, five years after he was hired, he was terminated without notice for alleged misconduct. Plaintiff asked Jordan to reconsider; his request was denied. Plaintiff then tried to contact Bernard Kulik, Deputy Associate Administrator, Disaster Assistance Division, and asked to be reinstated. He made several unsuccessful calls and then wrote him on April 12, 1990. Kulik did not respond.

### Discussion

Latinsky claims that he was wrongfully discharged in violation of his First and Fifth Amendment rights, and that he was

---

1. Plaintiff claims that he was fired for repeating general statements he heard from another SBA employee about a new attorney/advisor being sent to the Virgin Islands. He had heard that the new employee had an alcohol problem, and he repeated the statement. Defendants claim that it was for his repeated failure to monitor files for which he was responsible.

improperly denied adverse action procedures.

■ Plaintiff argues that he is not a temporary excepted service employee, but a permanent one. He points to the fact that he has health benefits, life insurance benefits, and other such perks.[2] He provides the Court with an affidavit of the former Area Counsel for the SBA, Robert Weiss, who states that although Latinsky was a temporary attorney, subject to furlough during periods of low disaster activity, he should have been moved to a "cadre" status which was more permanent, and in fact, he was told that Latinsky had the same rights as cadre attorneys. Finally, Latinsky points to the September 1989 notice advising him of the adverse action procedures when he elected not to move with the office.

It is clear that "[n]o provision of the CSRA [Civil Service Reform Act of 1978] gives nonpreference members of the excepted service the right to administrative or judicial review of suspension for misconduct." *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988). Chapter 75 of the Act, upon which plaintiff relies, governs adverse actions taken against employees for "efficiency of service," which includes dismissal for misconduct. *Id.* 108 S.Ct. at 672. It specifically excludes nonpreference excepted employees. *Id.* *See* *also* 5 U.S.C. § 7511(a)(1). Excepted service employees are generally considered at will employees, and thus are not given the same sort of protections given to federal employees in the competitive service. *Sullivan v. Stark*, 808 F.2d 737 (10th Cir.1987). *See* *also Garrow v. Gramm*, 856 F.2d 203, 205 (D.C.Cir.1988) (stating that under Chapter 75 a non-veteran, excepted service attorney "may be dismissed without cause, without prior notice, and without a termination hearing or an opportunity to appeal the decision.") However, § 7511(c) allows the Office of Personnel Management (OPM) to apply the protective provisions of this chapter to any position or group of positions excepted from competitive service by regulation of the Office. 5 U.S.C. § 7511(c).

Plaintiff claims that defendants' conduct and representations have created a legitimate expectation of continued employment and job security protected by the OPM's adverse action procedures; thus, he contends he is entitled to administrative and judicial review.

The SBA has established grievance procedures which are set forth in the SBA's Office of Personnel Standard Operating Procedures (SOP). Disciplinary and adverse actions are covered by SOP 37 71 1. (*See* Defendants' Notice to the Court.) These procedures provide for the presenting and consideration of certain employee grievances on decisions, actions, or conditions relating to their employment that they believe to be arbitrary or unjust. Under the SOP a current or former employee of the SBA for whom a remedy can be provided may file a grievance, that is, a request relating to the problem, and request relief. However, the term "grievance" is limited. Paragraph 4(c) sets forth matters which are excluded under the grievance procedures. Concerns or dissatisfactions over "the termination of temporary employment, or the separation of non-veterans in the excepted service" are specifically excepted. *Id.* at 4(c)(15). Accordingly, regardless of whether plaintiff is a temporary excepted service employee or a permanent excepted service employee, he does not have rights created by the Office of Personnel of the SBA which provide for grievance proceedings for his termination. Accordingly, plaintiff's claim that the SBA acted arbitrarily and in violation of its process is dismissed.

Remaining are plaintiff's claims that defendants' actions violated his First and Fifth Amendment rights to due process and freedom of speech.

■ Plaintiff's claim that his longstanding employment and the September 1989 letter established a property interest in his job such that he could not be terminated without due process is without merit. As

---

**2.** Plaintiff claims the understanding he signed in 1985 only applied to a probationary period.

the Court of Appeals for the District of Columbia Circuit pointed out in *Garrow v. Gramm*, 856 F.2d at 206, a government employee has yet to be held to have a protected property interest in employment unless language qualifying discharge for "cause" or comparable reasons are present.[3] A property "interest can only be created by understandings, statutes, or rules that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 207 (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).)[4] Plaintiff's September 1989 RIF letter does not give him such an interest. It only gives him an interest in due process proceedings should he be terminated as a result of the transfer, not as a result of later conduct. Accordingly, plaintiff's due process claim must also be dismissed.

■ As for plaintiff's claim that his termination violated his First Amendment right to freedom of speech, the Court disagrees. "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983). However, the government also has an interest in promoting the efficiency of public service. These two interests must be balanced. *Id.* 103 S.Ct. at 1686, 2687. *See also Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Our Court of Appeals quite succinctly restated the test for such balancing:

> [Plaintiff's] First Amendment claim is governed by *Pickering v. Board of Educ.*, [cite omitted], and its offspring.

As later elaborated by the Supreme Court, the *Pickering* cause of action has four elements. First, the public employee must have been speaking on a matter of public concern. If the speech is not of public concern, "it is unnecessary ... to scrutinize the reasons for [the] discharge," *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), at least "absent the most unusual circumstances." *Id.* at 147, 103 S.Ct. at 1690. Second, the court must "balance" the interests of the employee, "as a citizen, in commenting upon matters of public interest and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. Third, the employee must prove that his speech was a substantial or motivating factor in his discharge. *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Finally, the government employer must be given an opportunity to prove that it would have reached the same decision even absent the protected conduct. *Id.*

The first two inquiries are questions of law for the court to resolve. [Cites omitted.]

*Hall v. Ford*, 856 F.2d 255, 258 (D.C.Cir. 1988). It is clear to the Court that plaintiff's presumed statements about the new attorney's alleged alcohol problems did not address matters of public concern. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not

---

3. The Court in *Garrow* did point out that if a statute set forth a very comprehensive list of prohibited reasons for termination, such that an employee would reasonably have as great an expectation of continued employment as one who knows he cannot be fired except for cause, he might have a property interest. *Garrow v. Gramm*, 856 F.2d at 206-7.

4. The terminated attorney in *Garrow* claimed that 5 U.S.C. § 2302(b)(10) provides a property interest requiring due process protections. Chapter 23 of the CSRA, 5 U.S.C. § 2302(b)(10), sets forth prohibited personnel practices which

are unrelated to job performance such as race, religion, sex, political affiliations, retaliation, and do "not adversely affect the performance of the employee or applicant or the performance of others...." Although plaintiff in this action does not argue this, the Court points out that § 2302(b)(10) does not give plaintiff any protection since even taking his interpretation of events, *i.e.*, that he repeated allegations that a new attorney might have an alcohol problem, his termination was based on conduct which could adversely affect the performance of Latinsky and the performance of others.

the appropriate forum in which to review the wisdom of a personnel decision taken by the public agency allegedly in reaction to the employee's behavior." *Connick v. Myers,* 103 S.Ct. at 1690. Therefore, "the limited First Amendment interest involved here does not require that [defendants] tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships." *Id.* at 1694. Accordingly, plaintiff's First Amendment claim also is dismissed.

### Conclusion

Plaintiff does not have standing to bring an action based on the refusal to give him an opportunity to pursue adverse action procedures before terminating him from his temporary, nonpreference excepted service position. Neither the CSRA nor the Office of Personnel's regulations provide him with administrative or judicial review. In addition, plaintiff's Fifth and First Amendment claims fail as he did not have a reasonable property interest in his job such that he could not be terminated without due process, and his statements were not such that they implicated matters of public concern.

In light of the above, defendants' motion to dismiss is granted and plaintiff's motion for a preliminary injunction is denied as moot.

SO ORDERED.