808 F.2d 737
 David M. SULLIVAN, Plaintiff-Appellant,
v.
Jack STARK, Superintendent, Grand Teton National Park, and
the United States National Park Service, an agency
of the United States Department of
Interior, and Tim J. Setnicka,
Defendants-Appellees.
 No. 84-1149.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 5, 1987.
 
 James D. Causey, Memphis, Tenn., for plaintiff-appellant.
 David A. Kern, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on the brief), Dist. of Wyo., Cheyenne, Wyo., for defendants-appellees.
 Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BROWN, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 This case involves the termination of a seasonal employee of the National Park Service (Park Service) before the expiration of the period specified in his employment agreement. Plaintiff, David M. Sullivan, contends that the district court erroneously concluded that (1) the Department of the Interior hearing examiner properly refused to assert jurisdiction over his administrative complaint; (2) Sullivan lacked a sufficient liberty interest in his employment to be entitled to Fifth Amendment protection; and (3) Sullivan's employment was at will, and he therefore lacked a sufficient property interest to be entitled to a hearing on the reasons for his dismissal.
 
 
 2
 On May 5, 1982, Sullivan signed a "Letter of Acceptance and Employment Agreement" with the Park Service to work as a park ranger in Grand Teton National Park from June 8, 1982, through September 30, 1982. Along with information about job duties, uniform requirements and provision of housing, this document includes the following statement:
 
 
 3
 "I understand that due to extenuating circumstances, such as lack of funds or other management changes, this offer of employment may be withdrawn or I may be terminated before my stated ending date."
 
 
 4
 R. I, 15. On August 8, 1982, Sullivan's employment was terminated. Two days later, the Park Service gave Sullivan a written statement explaining why he had been terminated, citing performance consistently below acceptable levels, despite counseling intended to effect improvement.
 
 
 5
 Sullivan demanded a hearing so that he could contest his termination, alleging that he was terminated because he had refused his superior's request to forge reports. When he was told he had no right to such a hearing, Sullivan filed a grievance with the Park Service against Grand Teton National Park. The Park Service ruled against Sullivan without a hearing. Sullivan appealed to the Office of Hearings and Appeals of the Department of the Interior, which then appointed a hearing examiner to review Sullivan's claim and to hold an evidentiary hearing. The hearing examiner ruled that he had no jurisdiction over Sullivan's claim.
 
 
 6
 Sullivan then filed this action in the United States District Court for the District of Wyoming. The district court granted defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), holding that Sullivan was an "excepted service" employee, see 5 U.S.C. Sec. 3302, who could be discharged at any time, with or without cause.
 
 
 7
 * Sullivan contends that the district court erred in holding that the Department of the Interior hearing examiner properly dismissed his administrative grievance on jurisdictional grounds. Specifically, Sullivan asserts that the Interior Department's internal procedures are inconsistent with the applicable federal regulations.
 
 
 8
 Under 5 C.F.R. Sec. 771.205, a public employee may file an administrative grievance against an employer for a variety of reasons, including allegations of retaliatory termination. The regulation provides, however, that this grievance procedure does not apply to separation actions unless the agency has extended coverage to them. 5 C.F.R. Sec. 771.206(c)(2). Accordingly, the Interior Department was not bound by regulation to recognize Sullivan's grievance unless it had extended coverage to this type of separation action. Although the Interior Department at one point impliedly extended coverage to Sullivan's claim by appointing a hearing officer to review it, the Department later corrected itself. It is clear that the policy of the Department is not to extend its grievance procedure to separation actions. The Department of the Interior Personnel Manual, 370 DM 771 3.6A(13), states that matters not covered by the grievance procedure include "A separation action ... or expiration of a term appointment, or term promotion of any duration."
 
 
 9
 In effect, Sullivan claims that notwithstanding this explicit exclusion of separation actions from coverage, once the agency recognized his claim it was precluded from correcting itself. We cannot accept this reasoning. An agency should have reasonable latitude to correct its errors. And, of course, challenges to subject matter jurisdiction may be made at any point in a proceeding. We see no conflict between the federal regulations and the Interior Department's procedures.
 
 II
 
 10
 Sullivan also argues that the Park Service's action violated his liberty interests. In Miller v. City of Mission, 705 F.2d 368 (10th Cir.1983), we explained the circumstances in which a public employee's liberty interest may be violated by the manner of termination:
 
 
 11
 "The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities. The manner in which a public employee is terminated may deprive him of either or both of these liberty interests. When the termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be provided a hearing at which he may test the validity of the proffered grounds for dismissal."
 
 
 12
 Id. at 373 (citations omitted); see also Eames v. City of Logan, 762 F.2d 83, 85-86 (10th Cir.1985); McGhee v. Draper, 639 F.2d 639, 642-43 (10th Cir.1981).
 
 
 13
 The record is sufficiently clear that we must conclude the Park Service's termination of Sullivan neither damaged his reputation nor barred him from seeking other employment. The Service informed Sullivan in a personal letter of the reasons he had been terminated. The letter, attached as an exhibit to Sullivan's complaint, consisted of a variety of complaints against Sullivan, each of which asserted that he was negligent or derelict in performing the duties of a park ranger. These complaints do not implicate concerns of constitutional stature. Cf. Stritzl v. United States Postal Service, 602 F.2d 249, 252-53 (10th Cir.1979) (statement that employee had "poor work habits and low productivity" does not implicate his liberty interests); Weathers v. West Yuma County School District R-J-1, 530 F.2d 1335, 1339 (10th Cir.1976) (that termination of employee makes him less attractive to other employers does not implicate liberty interest).
 
 III
 
 14
 The more difficult issue is whether Sullivan had a sufficient property interest in his employment to entitle him to a hearing on his termination as a matter of constitutional due process.
 
 
 15
 Sullivan does not contest the government's assertion that his position as a seasonal or temporary employee of the Park Service was in the "excepted," rather than the "competitive," service. "Excepted service" employees are ordinarily considered to be "at will" employees, and are not entitled to the statutory procedural protections against discharge accorded federal employees in the competitive service. See 5 U.S.C. Secs. 7511(a)(1), 7513(b); Fowler v. United States, 633 F.2d 1258, 1260 (8th Cir.1980). Sullivan argues, however, that he has greater rights than an "at will" employee because the Park Service expressly agreed to employ him for a stated term, subject to early termination only in the event of "extenuating circumstances, such as lack of funds or other management changes." Even if we assume that the Park Service had the authority to contract with Sullivan for a short but definite term and in fact did so, that does not change Sullivan's status vis-a-vis the procedural protections of 5 U.S.C. Sec. 7513(b), because those rules apply only to competitive service federal employees.
 
 
 16
 Sullivan's employment status, however, is crucial with respect to his constitutional claim to procedural due process. If Sullivan had a valid contract of employment for a definite term he had a property interest, protected by the Due Process Clause of the Constitution, in employment for the duration of the term. See Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972) (citing Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)); Vanelli v. Reynolds School District No. 7, 667 F.2d 773, 777 (9th Cir.1982); Kendall v. Board of Education, 627 F.2d 1, 4 (6th Cir.1980). If Sullivan was an at will employee, however, he had no such protected right, but could be discharged without cause. Brown v. Reardon, 770 F.2d 896, 904 (10th Cir.1985); see also Eames, 762 F.2d at 85.
 
 
 17
 Similarly, any claim Sullivan may have for breach of contract is initially dependent on whether he is an at will or term employee. The Park Service argues that Sullivan did not assert a claim for breach of contract, and may not assert it for the first time on appeal. Sullivan's complaint makes broad-based assertions far beyond any possible entitlement, but under the rules we apply to dismissals on the pleadings, we hold that the complaint states a claim for breach of a contract of employment for a definite term. The district court has jurisdiction over a claim against the government for breach of a contract of employment if the amount at issue is less than $10,000, as we believe to be the case here. See 28 U.S.C. Sec. 1346(a)(2); United States v. Hopkins, 427 U.S. 123, 126, 96 S.Ct. 2508, 2510, 49 L.Ed.2d 361 (1976).
 
 
 18
 A crucial issue then in this case is whether the contract before the court was one for at will rather than term employment, either by its own terms or because anyone undertaking excepted service employment with the government is deemed to have so contracted.
 
 
 19
 Some courts have stated broadly that a federal employee in an excepted position may be discharged at will without cause and is not entitled to recover on a contract. See Fowler, 633 F.2d at 1262; Chollar v. United States, 126 F.Supp. 448, 449, 130 Ct.Cl. 338 (1954). Other decisions have held that an employee in excepted service may have a property interest in employment when the conduct or representations of the employing agency have created a legitimate expectation of job security. See, e.g., Orloff v. Cleland, 708 F.2d 372, 377 (9th Cir.1983) (postponement of termination of Veterans Administration employee after initial expiration date of appointment may have given rise to property interest in continued employment); Ashton v. Civiletti, 613 F.2d 923, 928-30 (D.C.Cir.1979) (representations in FBI's employees' handbook amounted to "a clearly implied promise of continued employment").
 
 
 20
 We think that a government agency, making excepted service appointments, has the power to enter employment contracts that confer property rights on the employee for the duration of the contract period. Cf. Castro v. United States, 775 F.2d 399, 405 (1st Cir.1985) (temporary appointments give rise to no expectation of continued employment "once those appointments expired"). We see nothing prohibiting the Interior Department from contracting for a definite term under its summer employment program. The question is whether it has done so.
 
 
 21
 The only employment document in the record is the "Letter of Acceptance and Employment Agreement" attached to the complaint. This document, signed only by Sullivan, contains his promise to work from June 8, 1982, until September 30, 1982, but does not contain an express reciprocal promise of term employment by the Park Service. The document refers to other information furnished in a "letter of employment" and a "Seasonal Employee Handbook" which have not been made a part of the record. Without these other documents or further evidence, we cannot tell whether the Park Service has contracted with Sullivan for a definite term. It is Sullivan's burden as plaintiff to prove, by a preponderance of the evidence, that his contract was for a definite term. But he need not prove it to defeat a motion to dismiss on the pleadings. Reasonable inferences from Sullivan's complaint and the attached employment agreement lend support to his assertion that he was employed for a definite term subject to discharge only for "extenuating circumstances" or, of course, for cause.
 
 
 22
 Thus, we cannot say, as a matter of law, that the Park Service had an unlimited right to terminate Sullivan at any time before the stated ending date of his employment contract. We therefore conclude that the district court acted prematurely in dismissing Sullivan's complaint under Fed.R.Civ.P. 12(b)(6).
 
 
 23
 On remand if the district court finds there was a valid contract for a term, it shall decide what kind of hearing due process requires in the circumstances at issue, see Mathews v. Eldridge, 424 U.S. 319, 333-35, 96 S.Ct. 893, 901-03, 47 L.Ed.2d 18 (1976), and what damages may be proper for the violation. See Memphis Community School District v. Stachura, --- U.S. ----, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("abstract value of a constitutional right" may not form the basis for a damages award).
 
 
 24
 The decision of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation